1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  ROBERT V. BUSTOS,

11          Plaintiff,                    No. 2:11-cv-1953-KJN

12      v.

13  MICHAEL J. ASTRUE,
    Commissioner of Social Security,
14
            Defendant.                    ORDER
15  _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17  Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

18  ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the

19  Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends

20  that the Commissioner erred by finding that plaintiff was not disabled from September 6, 2005,

21  through the date of the final administrative decision.  (Dkt. No. 22.)  The Commissioner filed an

22  opposition to plaintiff's motion and a cross-motion for summary judgment.  (Dkt. No. 23.)  For

23  the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the

24  _____

25      [1]  This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28
    U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States
26  Magistrate Judge.  (Dkt. Nos. 9, 11.)

                                            1

1   Commissioner's cross-motion for summary judgment, and enters judgment for the

2   Commissioner.

3   I.      BACKGROUND

4           Plaintiff was born on August 27, 1956, has at least the equivalent of a high school

5   education, and previously worked as a hand packager (among other jobs).[2]  (Administrative

6   Transcript ("AT") 30, 51-54, 62-63, 136.)  On August 4, 2008, plaintiff applied for DIB and SSI,

7   alleging that he was unable to work as of September 6, 2005, primarily due to depression,

8   anxiety, nervousness, and panic attacks.  (AT 10, 34, 62-63, 136, 170, 242.)  On January 16,

9   2009, the Commissioner determined that plaintiff was not disabled.  (AT 10, 69-73, 74-78.)

10  Upon plaintiff's request for reconsideration, the determination was affirmed on April 28, 2009.

11  (AT 10, 79-83, 84-88.)  Subsequently, plaintiff requested a hearing before an administrative law

12  judge ("ALJ"), which took place on June 24, 2010.  (AT 10, 22, 89.)

13          In a decision dated July 13, 2010, the ALJ determined that plaintiff had not been

14  under a disability, as defined in the Act, from September 6, 2005, through the date of that

15  decision.  (AT 17.)  The ALJ's decision became the final decision of the Commissioner when the

16  Appeals Council denied plaintiff's request for review on May 26, 2011.  (AT 1-6.)  Thereafter,

17  plaintiff filed this action in federal district court on July 25, 2011, to obtain judicial review of the

18  Commissioner's final decision.  (Dkt. No. 1.)

19  II.     ISSUES PRESENTED

20          Plaintiff has raised the following issues: (1) whether the ALJ improperly

21  evaluated the mental health opinion evidence, in particular the opinions of state agency

22  psychiatrist Dr. Lee and consultative examining psychiatrist Dr. Patrick Wong; and (2) whether

23  the ALJ failed to properly credit certain portions of the vocational expert's testimony.

24  _____

25      [2]  Because the parties are familiar with the factual background of this case, including
    plaintiff's medical history, the court does not exhaustively relate those facts here.  The facts
26  related to plaintiff's impairments and medical history will be addressed insofar as they are
    relevant to the issues presented by the parties' respective motions.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ found

---

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt.

that plaintiff remained insured for purposes of DIB through March 31, 2008.  (AT 10.)  At the

first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since

September 6, 2005, plaintiff's alleged disability onset date.  (AT 12.)  At step two, the ALJ

determined that plaintiff had the following severe impairments: depression and anxiety.  (Id.)

However, at step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (Id.)

> Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual
> functional capacity to perform a full range of work at all exertional
> levels but with the following nonexertional limitations: The
> claimant is limited to simple repetitive tasks with limited peer,
> public, and supervisor interaction.

(AT 13.)

> At step four, the ALJ found that plaintiff was capable of performing his past

relevant work as a hand packager.  (AT 16.)  The ALJ relied on the testimony of a vocational

expert ("VE"), who testified that the Dictionary of Occupational Titles ("DOT") classified that

job as requiring medium level exertion with a specific vocational preparation ("SVP") level of 2,

which is considered to be unskilled work.  (AT 16-17, 54.)  The VE further testified that, given

plaintiff's assessed RFC, plaintiff could perform his past relevant work as it is generally

---

> 404, Subpt. P, App.1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past
> work?  If so, the claimant is not disabled.  If not, proceed to step
> five.
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

> The claimant bears the burden of proof in the first four steps of the sequential evaluation
> process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
> burden if the sequential evaluation process proceeds to step five.  Id.

1  performed in the national economy.  (AT 16-17, 56.)  Accordingly, the ALJ concluded that

2  plaintiff had not been under a disability, as defined in the Act, from September 6, 2005, through

3  the date of the ALJ's decision.  (AT 17.)

4          B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations

5              1.     Whether the ALJ improperly evaluated the opinion evidence

6          In this case, there is essentially no dispute that plaintiff suffers from depression

7  and anxiety.  The medical records reflect several diagnoses of major depressive disorder and

8  generalized anxiety disorder attributable in large part to the death of plaintiff's wife in 2005, and

9  the ALJ at step two found plaintiff's depression and anxiety to be severe.  (AT 12, 272-73, 326-

10  51, 374-83.)  At issue in this case is the extent of plaintiff's symptoms and functional limitations

11  attributable to his mental impairments.  In this regard, plaintiff contends that the ALJ improperly

12  evaluated the opinions of state agency psychiatrist Dr. Lee and consultative examining

13  psychiatrist Dr. Patrick Wong.

14          The weight given to medical opinions depends in part on whether they are

15  proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

16  F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

17  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

18  opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d

19  1273, 1285 (9th Cir. 1996).

20          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

21  considering its source, the court considers whether (1) contradictory opinions are in the record;

22  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

23  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

24  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may

25  be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

26  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

1   examining professional's opinion (supported by different independent clinical findings), the ALJ

2   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

3   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

4   weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ

5   in any event need not give it any weight if it is conclusory and supported by minimal clinical

6   findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

7   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

8   non-examining professional, without other evidence, is insufficient to reject the opinion of a

9   treating or examining professional.  Lester, 81 F.3d at 831.

10          The record here does not contain any mental functional capacity evaluations from

11   plaintiff's treating sources.  However, on October 15, 2008, consultative examining psychiatrist

12   Dr. Patrick Wong performed a psychiatric examination of plaintiff.  (AT 272-74.)  At that time,

13   plaintiff complained of decreased focus and being easily distracted, appetite loss and weight loss,

14   feeling tired and depressed most of the time, and an inability to sleep resulting in exhaustion, but

15   denied suicidal thoughts and anxiety panic attacks.  (AT 272.)  He also reported no history of

16   psychotherapy or speciality care through a psychiatrist, but stated that he took Zoloft, Xanax, and

17   Seroquel, which made him feel "a little less tense perhaps calmer."  (AT 272.)  Upon

18   examination, Dr. Wong observed that plaintiff was clean and neatly groomed, oriented in all

19   spheres, easily engaged with a sociable demeanor and trying to keep a pleasant outward persona,

20   but noted that plaintiff appeared tired and psychomotor retarded.  (AT 273.)  Dr. Wong found

21   plaintiff's speech to be generally clear and fluent with generally good eye contact, although

22   plaintiff fatigued quickly and had a depressed mood and affect.  (Id.)  Plaintiff's thought

23   formation was assessed as generally linear and well organized, with some loss of mental

24

---

25          [4]  The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1  endurance.  (Id.)  Dr. Wong stated that plaintiff's thought content was "remarkable for a sense of

2  lost hope and a sense of having little reason to live," but noted that plaintiff did not have outright

3  suicidal, odd, or delusional thoughts.  (Id.)  Plaintiff's fund of knowledge was intact for current

4  events and his own personal history.  (Id.)  Dr. Wong found plaintiff's attention and memory to

5  be fairly good, with some decrease in concentration and mental endurance.  (Id.)

6         Dr. Wong diagnosed plaintiff with "major depression, single episode, moderate to

7  moderate severe" and a GAF of 40-50.[5]  (AT 273-74.)  He opined that, despite having no prior

8  history of psychiatric disorders, plaintiff had a bereavement that escalated into a major

9  depression, and displayed classic vegetative changes.  (Id.)  Dr. Wong assessed plaintiff's

10  functional ability as follows:

11         His ability to carry out simple instructions is generally intact.  His
        ability to carry out complex instructions is diminished by his
12         reduced endurance, the vegetative symptoms of depression such
        that throughout the course of the day he is likely to have periods
13         where he is markedly impaired in his ability to carry out complex
        instructions.  At his best, he is mild to moderately impaired in his
14         ability to carry out complex instructions.  His ability to relate to co-
        workers and the public is impaired by his depressed mood, he is
15         slowed down, and psychomotor retarded.  He puts forth great effort
        to put up a good front, which he can sustain for short periods of
16         time.  His ability to relate to a supervisor is moderately impaired as
        well.  Therefore, his ability to maintain an adequate pace and level
17         of endurance over an eight-hour workday is markedly impaired.  At
        this time, his ability to adapt to changes in a workplace is
18         moderately impaired by symptoms of depression.  The probability
        of functional deterioration due to typical workplace stressors is
19         significantly elevated.  Mr. Bustos is probably capable of staying
        consistently aware of safety issues in the workplace.  Mr. Bustos is
20         currently capable of responsibly managing his own funds.

21  _____

22         [5]  GAF is a scale reflecting "psychological, social, and occupational functioning on a
   hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental
23  Disorders 34 (4th ed. 2000).  A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal
   ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social,
24  occupational, or school functioning (e.g., no friends, unable to keep a job)."  Id.  A GAF of 31-40
   indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times
25  illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school,
   family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects
26  family, and is unable to work; child frequently beats up younger children, is defiant at home, and
   is failing at school)."  Id.

7

1    (AT 274.)

2            Subsequently, on November 17, 2008, state agency psychiatrist Dr. Lee reviewed

3    plaintiff's available records and completed a psychiatric review technique form ("PRTF") and a

4    mental residual functional capacity assessment.  (AT 275-85, 286-88.)  Dr. Lee diagnosed

5    plaintiff with a major depressive episode with "complicating bereavement."  (AT 278.)  He

6    assessed plaintiff as not significantly limited in his ability to remember locations and work-like

7    procedures; understand, remember, and carry out very short and simple instructions; perform

8    activities within a schedule, maintain regular attendance, and be punctual within customary

9    tolerances; sustain an ordinary routine without special supervision; make simple work-related

10   decisions; ask simple questions or request assistance; maintain socially appropriate behavior and

11   adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take

12   appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic

13   goals or make plans independently of others.  (AT 286-87.)

14           Dr. Lee further stated that plaintiff was moderately limited in his ability to

15   understand, remember, and carry out detailed instructions; maintain attention and concentration

16   for extended periods; work in coordination with or proximity to others without being distracted

17   by them; complete a normal workday and workweek without interruptions from psychologically

18   based symptoms and perform at a consistent pace without an unreasonable number and length of

19   rest periods; interact appropriately with the general public; accept instructions and respond

20   appropriately to criticism from supervisors; get along with coworkers or peers without distracting

21   them or exhibiting behavioral extremes; and respond appropriately to changes in the work

22   setting.  (Id.)  Based on these limitations, Dr. Lee opined that plaintiff was "mentally capable of

23   adapting to and performing sustained simple tasks, with limited public/peer and supervisor

24   interactions."  (AT 288.)

25           Thereafter, on April 27, 2009, another non-examining state agency psychiatrist,

26   Dr. Tashjian, affirmed Dr. Lee's assessment.  (AT 360-61.)

1          As an initial matter, plaintiff argues that the ALJ, while ostensibly giving

2   significant weight to Dr. Lee's opinion (AT 16), actually rejected Dr. Lee's specific findings

3   regarding plaintiff's various moderate mental functional limitations.  This argument lacks merit.

4   In his assessment, Dr. Lee synthesized and translated all of the assessed functional limitations

5   into a functional capacity assessment, concluding that, despite plaintiff's various moderate

6   mental limitations, plaintiff was capable of adapting to and performing sustained simple tasks

7   with limited public, peer, and supervisor interaction.  (AT 288.)  In his decision, the ALJ again

8   delineated the specific moderate limitations assessed by Dr. Lee, along with Dr. Lee's opinion

9   regarding the work plaintiff was capable of performing notwithstanding those limitations,

10  concluding that Dr. Lee's opinion was entitled to significant weight.  (AT 16.)  The ALJ then

11  essentially adopted Dr. Lee's assessment of plaintiff's functional capacity as the operative RFC

12  assessment.  (AT 13, 16.)

13         The Ninth Circuit noted that an ALJ may synthesize and translate assessed

14  limitations into an RFC assessment without repeating each functional limitation verbatim in the

15  RFC assessment.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008); see also

16  20 C.F.R. § 404.1545 (defining RFC as "the most you can still do despite your limitations").  In

17  this case, plaintiff's assessed RFC appears to adequately capture the moderate functional

18  limitations assessed by Dr. Lee.  For example, plaintiff's moderate limitations with respect to

19  attention, concentration, and more detailed tasks are accounted for by the restriction to simple

20  tasks, whereas plaintiff's moderate social limitations are encompassed by the restriction to

21  limited public, peer, and supervisor interaction.  Furthermore, a position involving simple tasks

22  and limited social interaction would logically implicate less pacing difficulties and involve a

23  reduced amount of change in the work setting, thereby addressing plaintiff's moderate limitations

24  with respect to pacing and changes in the work environment.  See Stubbs-Danielson, 539 F.3d at

25  1174 (holding that an ALJ's assessment of a claimant adequately captures restrictions related to

26  concentration, persistence, or pace where the assessment is consistent with restrictions identified

9

1  in the medical testimony).

2        Moreover, even assuming *arguendo* that a particular moderate functional

3  limitation identified by Dr. Lee was not adequately encompassed in the assessed RFC, this would

4  be harmless error, because the Ninth Circuit also held that moderate mental limitations do not

5  even require vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007)

6  ("We have not previously held mild or moderate depression to be a sufficiently severe non-

7  exertional limitation that significantly limits a claimant's ability to do work beyond the exertional

8  limitation").  For these reasons, the court finds no error in the ALJ's evaluation of Dr. Lee's

9  opinion.

10        Plaintiff next contends that the ALJ erroneously rejected the opinion of

11  consultative examining psychiatrist Dr. Wong.  Although the functional limitations assessed by

12  Dr. Wong were generally very similar to those assessed by Dr. Lee, Dr. Wong found plaintiff to

13  be markedly impaired, as opposed to moderately impaired, in his ability to maintain an adequate

14  pace and level of endurance over an eight-hour workday.  (AT 274, 287.)  This finding is

15  significant, because the vocational expert testified that this particular limitation, if credited,

16  would render plaintiff unable to do his past work or any other work in the national economy.

17  (AT 57-58.)  Furthermore, Dr. Wong opined that the probability of plaintiff's functional

18  deterioration due to typical workplace stressors was significantly elevated.  (AT 274.)

19  Nevertheless, the court finds that the ALJ provided specific and legitimate reasons for rejecting

20  Dr. Wong's opinion.

21        Significantly, the ALJ observed that Dr. Wong's opinion is "inconsistent with the

22  substantial evidence of record showing a lesser degree of impairment in all work related

23  activities."  (AT 15.)  Indeed, while plaintiff's treatment records from San Joaquin County

24  Mental Health Services ("SJCMHS") document diagnoses and symptoms of depression, anxiety,

25  and difficulty sleeping, his treating providers' findings were largely unremarkable, and plaintiff

26  was fairly consistently noted to be stable on his medications.  (AT 326-51, 374-83.)

1        Although plaintiff described more acute symptoms in the immediate aftermath of

2  his wife's death, plaintiff indicated that he was "getting better" in October 2005, with better

3  sleep, good appetite, good concentration, and fair energy. (AT 342.)  During an October 5, 2006

4  assessment, plaintiff described anxiety attacks and complained of constant worries about his son

5  and financial problems, but informed SJCMHS physician Dr. Kyaw that his medications helped

6  him a lot and that he was able to function fairly well.  (AT 340.)  At that time, Dr. Kyaw

7  indicated that plaintiff's insight, judgment, memory, and concentration were fairly good, and that

8  he was "clinically and psychiatrically fairly stable without having acute symptoms with current

9  treatment." (AT 339.)  Subsequently, on February 8, 2007, plaintiff reported not sleeping well,

10  but stated that his appetite, concentration, and energy were good.  (AT 338.)  Plaintiff was

11  observed to be clean and alert with a normal mood and fair range of affect.  (Id.)  On June 21,

12  2007, plaintiff was noted to be doing well on his medications with a stable mood and no side

13  effects, and was assessed with a GAF of 65.[6]  (AT 336-37.)  By March 2008, plaintiff indicated

14  that he was doing "fine" with good sleep, appetite, and energy.  (AT 334.)  He was assessed as

15  clear and alert with a good mood and fair range of affect.  (Id.)  Later that year, on July 16, 2008,

16  plaintiff's depression, anxiety, and functioning in daily living were noted to be stable and

17  improved with a GAF of 70.  (AT 332-33.)  On October 15, 2008, plaintiff stated that he was still

18  having some anxiety, but that he was actively seeking employment.  (AT 331.)  Plaintiff was

19  observed to answer questions clearly with linear thoughts.  (Id.)

20        Plaintiff's more recent treatment records are equally unremarkable.  On March 5,

21  2009, SJCMHS staff indicated that plaintiff was stable on his current medications and again

22  assessed a GAF of 70.  (AT 329, 381.)  Thereafter, on May 15, 2009, plaintiff reported that his

23

24     [6] A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild
insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional
25  truancy, or theft within the household), but generally functioning pretty well, has some
meaningful interpersonal relationships."  Diagnostic and Statistical Manual of Mental Disorders
26  34 (4th ed. 2000).

1  daily activities included actively searching for a job and socializing with friends.  (AT 380.)

2  Plaintiff was noted to be pleasant, polite, and well groomed with good hygiene, satisfactory

3  appetite and sleep, a broad affect, normal speech, clear and linear thoughts, and fair memory with

4  a GAF of 65.  (Id.)  At an August 28, 2009 visit with nurse practitioner Lucille Capo Rome,

5  plaintiff stated that he was doing better, slept 7 hours a night, had siblings who supported him,

6  was active bicycling, and was looking for a job.  (AT 378.)  Ms. Rome observed that plaintiff

7  was neatly groomed with good eye contact, fluid speech, pleasant mood, appropriate affect, linear

8  thoughts, and good insight and judgment, and she assessed a GAF of 65.  (Id.)  Finally, a

9  February 22, 2010 treatment note by psychiatrist Dr. Syed Kazmi reflects that plaintiff was stable

10  on his medications with no side effects, that he was still unemployed with some financial stress,

11  but that he preferred no change in his medications.  (AT 376.)  He was again assessed with a

12  GAF of 65.  (Id.)

13        As is evident from the above, the ALJ reasonably concluded that the marked

14  pacing and endurance limitations assessed by Dr. Wong are inconsistent with a longitudinal view

15  of the medical evidence and treatment records, which document relatively mild clinical findings

16  and are more consistent with the moderate functional limitations assessed by Dr. Lee.

17        Additionally, the ALJ also reasonably found that plaintiff's daily activities were

18  inconsistent with the disabling functional limitations assessed by Dr. Wong and alleged by

19  plaintiff.  (AT 14, 15.)  The ALJ noted that:

20        "[I]n his Adult Function Report, the claimant admitted that he
          looks for a job, performs indoor and outdoor chores, has no
21        problem with personal care, is able to go out alone, is able to drive
          himself, socializes with friends and family about 3 times a week,
22        does not have any problem getting along with family, friends,
          neighbors or others, and is able to finish what he starts [Exhibit
23        5E].

24  (AT 14; see also AT 195-207.)  In that same September 4, 2008 report, plaintiff further indicated

25  that he was able to pay bills, count change, handle a savings account, and use a checkbook or

26  money orders; enjoyed fishing, playing basketball, watching TV, and using the computer; and

1  could pay attention for 2 hours at a time.  (AT 198-200.)

2           The ALJ further noted that plaintiff had actually worked in several different jobs,

3  including janitorial work, farm work, and driving senior citizens, since the alleged disability

4  onset date of September 6, 2005.  (AT 14.)  While this evidence carries some persuasive force, it

5  is not in itself sufficient to reject Dr. Wong's assessed functional limitations, because as the ALJ

6  acknowledged, plaintiff only worked in these jobs for short periods of time, and the work activity

7  did not rise to the level of substantial gainful activity.  (AT 12, 14.)  However, as noted above,

8  the ALJ provided several other independent specific and legitimate reasons for rejecting Dr.

9  Wong's opinion concerning plaintiff's functional limitations.

10           Finally, the ALJ was also justified in giving significant weight to Dr. Lee's

11  opinion, because, as discussed above, Dr. Lee's assessment was consistent with the clinical

12  findings of plaintiff's treating sources, plaintiff's daily activities, and the weight of the evidence

13  in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (noting that the

14  opinions of non-examining physicians may serve as substantial evidence when those opinions are

15  consistent with independent clinical findings or other evidence in the record).

16           Therefore, the court concludes that the ALJ properly evaluated the mental health

17  opinion evidence, and that substantial evidence supports the ALJ's RFC assessment.

18           2.    Whether the ALJ failed to properly credit the testimony of the vocational

19                 expert

20           At the administrative hearing, the VE testified that, given plaintiff's assessed

21  RFC, plaintiff could perform his past relevant work as a hand packager as it is generally

22  performed in the national economy.  (AT 16-17, 54, 56.)  In his briefing, plaintiff essentially

23  argues that the ALJ erred by failing to credit portions of the VE's testimony based on

24  hypotheticals containing additional limitations not included in the ALJ's final RFC assessment.

25  However, in light of the court's conclusion that the ALJ's RFC assessment was supported by

26  substantial evidence, the court also finds that the ALJ appropriately relied on the VE's testimony

1   in response to the hypothetical that reflected that RFC assessment.  See Magallanes v. Bowen,

2   881 F.2d 747, 756-57 (9th Cir. 1989) (explaining that an ALJ may limit a hypothetical question

3   to restrictions that are supported by substantial evidence in the record).

4            Additionally, as the ALJ observed, plaintiff at the administrative hearing

5   essentially conceded that he could do his past relevant work:

6            Claimant testified that he could not do his past relevant work
             because he could not lift or carry over 150-200 pounds which he
7            claimed was required in his particular job as a hand packager.
             However, claimant admitted that he could perform this work if the
8            weight was limited to small packages, which is consistent with the
             DOT definition placing the exertional level at medium.  As there is
9            no reason to doubt the vocational expert's testimony or the
             provisions of the DOT, the undersigned finds the claimant capable
10           of performing past relevant work as a hand packager as it is
             described in the DOT and as generally performed in the economy.

11

12   (AT 16-17, 54-55.)  Accordingly, the court finds that the ALJ also properly evaluated the VE's

13   testimony.

14   V.    CONCLUSION

15            For the foregoing reasons, IT IS HEREBY ORDERED that:

16            1.    Plaintiff's motion for summary judgment (dkt. no. 22) is DENIED.

17            2.    The Commissioner's cross-motion for summary judgment (dkt. no. 23) is

18   GRANTED.

19            3.    Judgment is entered for the Commissioner.

20            4.    The Clerk of Court is directed to close this case.

21            IT IS SO ORDERED.

22   DATED:  October 19, 2012

23

24                                                  _____
                                                    KENDALL J. NEWMAN
25                                                  UNITED STATES MAGISTRATE JUDGE

26